Shawn P. Ryan, OSB #901137
Gus Solomon Courthouse
620 SW Main Street, Suite 612
Portland, Oregon 97205
(503) 417-0477

Chenoweth Law Group, P.C.
Brian D. Chenoweth, OSB #944991
Sandra S. Gustitus, OSB #143298
510 S.W. 5th Ave., Fifth Floor
Portland, OR 97204
(503) 221-7958

Attorneys for Richard A. Kreitzberg

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | Case No. 16-30477-rdl11 |
| | ) | |
| Data Systems, Inc., | ) | |
| | ) | MOTION TO DISMISS AND, IN THE |
| Debtor. | ) | ALTERNATIVE, TO APPOINT |
| | ) | TRUSTEE |

Prefiling Conference Certification: Pursuant to Local Bankruptcy Rule 7007-1(a), the undersigned counsel hereby certifies that a good faith effort was made to confer by telephone conference with opposing counsel, which efforts included: a telephone call with Ted A. Troutman, attorney for Debtor, on February 22, 2016 and emails with Mr. Troutman on February 22 and 23, 2016.

MOTIONS

Pursuant to 11 U.S.C. Section 1112(b), Richard A. Kreitzberg ("Kreitzberg") respectfully requests that this case be dismissed for cause, including: 1) that Debtor lacked the necessary and appropriate corporate authority to file this case; 2) for lack of good faith because this case was filed for an improper purpose; and 3) that Debtor is being grossly mismanaged.

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 1

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

In the alternative and pursuant to 11 U.S.C. Section 1104(a)(1) and (a)(2), Kreitzberg respectfully requests the appointment of a trustee: 1) for cause, including dishonesty, incompetence, and/or gross mismanagement of the affairs of the Debtor by current management before the commencement of this case; and 2) since such appointment is in the interests of creditors, equity security holders, and other interests in this case.

## INTRODUCTION

Debtor, Data Systems, Inc. ("DSI") is a solvent Oregon corporation, publically traded on the NASDAQ Stock Market. William Holdner ("Holdner") and Jane Baum ("Baum") serve as DSI's directors and its president and secretary, respectively. Holdner has held this position for over 50 years, Baum for over 20.

In March, 2015, Kreitzberg, a shareholder who owned over 37% of DSI at the time, filed a derivative lawsuit on behalf of DSI in Multnomah County Circuit Court, case number 15CV07240 ("Corporate Breach and Removal Lawsuit"). Kreitzberg filed the lawsuit after he learned Holdner had signed a purchase and sale agreement for DSI's main asset and intended to liquidate the corporation. Holdner did not have authorization from shareholders to sell substantially all of DSI's assets or to liquidate DSI.

The lawsuit is against Holdner and Baum for decades of breaching their fiduciary duties, self-dealing, and mismanagement of DSI through conflict of interest transactions. The lawsuit seeks to remove Holdner and Baum as directors of DSI and seeks damages for their ongoing harm to DSI.

Since Kreitzberg filed the Corporate Breach and Removal Lawsuit, the Multnomah County Court entered a preliminary injunction to prevent Holdner and Baum from selling any DSI property without taking the following actions: holding a shareholders' meeting to elect a new board of directors; resolving as a board to sell property; obtaining shareholder approval of the resolution to sell property; and obtaining court approval of those steps and the sale.

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 2

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

In December, 2015, Kreitzberg sought a preliminary injunction to remove Holdner and Baum as directors, given their ongoing irreparable harm to the company. Throughout the lawsuit, Kreitzberg discovered additional mismanagement, including that Sol Riffel, who Holdner and Baum alleged was DSI's third director, is incapacitated with Alzheimer's dementia and lives in a care facility.

On January 29 and February 5, 2016, the Circuit Court held a hearing on the preliminary injunction to remove Holdner and Baum. The judge in the Corporate Breach and Removal Lawsuit asked the parties to return on February 11, 2016, at 11 a.m. for a ruling on the injunction, stating that if he were going to grant the motion, he would need the parties present to work through the details of the injunction. At 10 a.m. on February 11, Kreitzberg's counsel received notice that DSI had filed this petition for bankruptcy, creating an automatic stay of the Corporate Breach and Removal Lawsuit. Holdner and Baum do not have the authority to file a petition for bankruptcy; they have conflicts of interest in the decision to file; and they filed the petition in bad faith to prevent the Multnomah County Circuit Court from removing them as directors. Therefore, the petition should be dismissed for lack of authority, as a bad faith filing, and for gross mismanagement. In the alternative, if this case is not dismissed, Kreitzberg requests the appointment of a trustee.

## FACTS

DSI incorporated in 1965. Gustitus Feb. 23 Decl. ¶ 9, Ex. G (hereafter "Gustitus Dec. 24 Decl.") ¶ 3, Ex. 38 (hereafter "Holdner Dep.") at 17:18–24. Holdner has served as DSI's president since its incorporation. He was first elected in 1965 and again in 1968 when DSI went public. Gustitus Feb. 23 Decl. ¶ 13, Ex. K (hereafter "Feb. 5 Hearing Trans.") at 7:22–8:3. Holdner testified that DSI is a publicly traded company. Holdner Dep. at 32:18–20. In 1968, DSI was authorized to issue 1,000,000 shares. Gustitus Feb. 23 Decl. ¶ 6, Ex. D (hereafter "Gustitus Sept. 22 Decl.") ¶ 3, Ex. 22 at 1.

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 3

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

DSI's bylaws require an annual shareholders meeting at which the shareholders elect a board of directors. Gustitus Feb. 23 Decl. ¶ 4, Ex. B (hereafter "Kreitzberg July 9 Decl.") ¶ 7, Ex. 2, ¶ 1.2. Despite that, DSI has not had an annual board of directors election or shareholders meeting in over 20 years. Holdner Dep. at 59:4–17. Nevertheless, Holdner holds himself out as the President of DSI and one of its directors. Feb. 5 Hearing Trans. at 7:22–8:3. Holdner and Baum hold Baum out as a director of DSI and its Secretary. Holdner Dep. at 63:16–25. Baum is Holdner's business partner in an accounting firm, Holdner, Backstrom, Baum & Co. ("HBB"). Holdner Dep. at 15:17–16:12. Holdner and Baum are romantically involved and live together. *Id.* According to Holdner and Baum, DSI's third director is Sol Riffel. *Id.* at 66:6–11. DSI, through Holdner and Baum, represent that Riffel is incapacitated; he has Alzheimer's dementia and lives in a care facility. Gustitus Feb. 23 Decl. ¶ 14, Ex. L.

Moreover, DSI has not initiated communication with the majority of its shareholders for over 20 years, and only communicates with shareholders when they call DSI's office. Holdner Dep. at 90:8–91:24. DSI does not possess updated and accurate addresses and contact information for many of its shareholders. *Id.* at 67:4–18. DSI is managed and controlled almost exclusively by Holdner. Baum rubber stamps Holdner's decisions contemporaneously or retroactively. Baum testified that Riffel only talks to Holdner, and she has only seen Riffel a few times in the last ten years. Gustitus Dec. 24 Decl. ¶ 4, Ex. 39 (hereafter "Baum Dep.") at 91:4–92:3. Baum has not dealt with Riffel with respect to DSI until the Corporate Breach and Removal Lawsuit was filed. *Id.* at 92:11–92:3. Riffel's son testified that his father has not had anything to do with DSI for over 20 years. Gustitus Feb. 23 Decl. ¶ 15, Ex. M at 10:8–19.

DSI's main asset is a class B office building at 975 SE Sandy Blvd, in Portland's close-in eastside business district (the "office building"). The market value of the office building is listed at $5,412,810. Kreitzberg July 9 Decl. ¶ 2, Ex. 1 at 2. DSI also owns five additional parcels within two blocks of that property, and the total market value of those

MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO APPOINT TRUSTEE
Page 4

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

properties is roughly $939,190. Gustitus Decl. Sept. 22 ¶ 4, Ex. 23 at 1–6. DSI's liabilities are approximately $300,000, which includes $115,500 in unpaid fees to Holdner and Baum's accounting firm, HBB, and $153,506 in real property taxes, which is at least three years of unpaid taxes. Gustitus Feb. 23 Decl. ¶ 12, Ex. J (hereafter "Gustitus Jan. 28 Decl.") ¶ 11, Ex. 52 at 2; Gustitus Dec. 24 Decl. ¶ 4, Ex. 39 at 40.

In February, 2015, Richard Kreitzberg owned over 37% of the shares of DSI, and learned from Holdner that he intended to sell DSI's office building. Kreitzberg July 9 Decl. ¶¶ 3, 5. Kreitzberg had not heard from Holdner and Baum in years and called to ask to review the company's last two financial statements. *Id.* ¶ 4. Holdner sent Kreitzberg the signed purchase and sale agreement ("PSA"). *Id.* ¶ 6. The PSA raised serious concerns for Kreitzberg, who asked that DSI cease and desist from the sale until a shareholders and board of directors meetings could be held. Kreitzberg July 9 Decl. ¶ 8, Ex. 9. When Holdner and Baum refused, Kreitzberg filed a derivative lawsuit in Multnomah County, on behalf of DSI, seeking Holdner and Baum's removal and damages for their breaches of fiduciary duty and mismanagement of DSI.

In addition to requiring annual shareholder meetings and board of directors elections, DSI's bylaws state that there shall be no less than four and no more than eleven directors. Kreitzberg July 9 Decl. ¶ 7, Ex. 2, ¶ 2.2. The resolution granting authority to file this petition contains only the names of Holdner, Baum, and Riffel. Gustitus Feb. 23 Decl. ¶ 14, Ex. L. Riffel did not sign the resolution; above his name someone wrote "incapacitated." *Id.* The resolution waives formal notice and meeting, and resolves that Holdner has authority to file the petition for bankruptcy and that the directors believe it is in the best interests of DSI. *Id.*

After Kreitzberg initiated the Corporate Breach and Removal Lawsuit, he learned that Holdner and Baum, with the assistance of counsel, created after-the-fact board resolutions approving DSI and Holdner's prior conduct. Baum Dep. at 116:2–119:8. These resolutions attempt to retroactively authorize actions taken by DSI over the last 20 years,

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 5

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

since it delisted from the SEC. Gustitus Dec. 24 Decl. ¶ 4, Ex. 39 at 47–74. One resolution approves an amendment of the bylaws to change the number of directors from a minimum of four to a minimum of three. *Id.* at 70. The effective date for the resolution is December 1, 1993, although Baum admitted these were created and signed after Kreitzberg filed his lawsuit in March 2015. Baum Dep. at 116:2–119:8. Although Sol Riffel signed the resolution, its effective date and the date it was signed are within the time period that Sol Riffel's son testified he had nothing to do with DSI. Gustitus Feb. 23 Decl. ¶ 15, Ex. M at 10:8–19. Another resolution authorizes Holdner to take a loan for $150,000 towards back salary he is owed. Gustitus Dec. 24 Decl. ¶ 4, Ex. 39 at 54. Holder and Baum both voted on these, despite their conflicts of interest. Holdner also recently claimed that he was owed a salary of $12,000 per year for the last 40 years, and that he has deferred that salary. Feb. 5 Hearing Trans. at 71:12–20.

As part of Kreitzberg's derivative lawsuit, he sought a preliminary injunction preventing the sale of any DSI property until DSI complied with its bylaws and Oregon law. The court granted that injunction, requiring DSI take certain steps before selling any property. Gustitus Feb. 23 Decl. ¶ 7, Ex. E. In December, 2015, Kreitzberg sought a preliminary injunction to remove Holdner and Baum as directors of DSI, and asked the court to appoint a disinterested board to govern DSI and determine what is best for the company and its shareholders. *Id.* ¶ 10, Ex. H. After roughly five hours of hearing evidence and argument related to the preliminary injunction, the judge stated:

> "I – you know, it feels like there's a pretty significant history of acting with a conflict of interest and kind of having – sitting on this huge asset and marketing it and selling it without any of the professional assistance you would get in order to maximize the value of a significant asset like this.
> And I know we're kind of in a holding pattern now, but we now have two – I mean, isn't it right, we sort of only have two board members now. We don't really have any proof that – that the board was reduced to three people to begin with, and we have two board members I'm pretty ready to make a finding have been acting in a – in a conflict manner for quite some time making decisions about this company as we go forward."

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 6

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477  FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

Feb. 5 Hearing Trans. at 127:22–128:11.  He stated:  "If I just deny the motion, I'll just let you know in writing.  If I want to fashion some relief in some way, I think what I'll do is we'll schedule another court appearance so we can have that discussion with everybody there."  *Id.* at 143:13–17.  He then asked his judicial assistant to get something on the docket and said that if it needed to be cancelled, they would cancel it and let the parties know beforehand.  *Id.* at 143:18–24.

Thereafter, he scheduled a hearing with the parties for February 11, 2016 at 11 a.m. to give his ruling on the injunction.  *Id.* at 144:18–25.  At 10 a.m. on February 11, Kreitzberg's counsel received notice that DSI filed this petition for bankruptcy, creating an automatic stay of the Corporate Breach and Removal Lawsuit.  Gustitus Feb. 23 Decl. ¶ 16, Ex. N.  The court had not cancelled the appearance, and the parties did not appear in front of the judge for the ruling on the preliminary injunction.

## ARGUMENT

1. <u>Motion to Dismiss for Lack of Authority to File.</u>

A corporation can only file a bankruptcy petition after a valid resolution from the board of directors.  *In re Runaway II, Inc*., 159 B.R. 537, 538 (Bankr.W.D.Mo.1993) ("[H]istorically it has always been true, even before the Bankruptcy Reform Act of 1978, that a valid resolution of the Board of Directors of a corporation was a prerequisite to the filing of a voluntary petition in bankruptcy by a corporation."); *In re Giggles Restaurant, Inc.*, 103 B.R. 549 (Bankr.D.N.J.1989) ("[I]t is clear that any corporate resolution which authorizes the filing of a voluntary bankruptcy petition must originate at a validly held meeting of directors and must be approved by the proper number of such directors.").  Because there was no valid resolution from DSI's board of directors, this bankruptcy case is not valid and should be dismissed.

DSI's board resolution is not valid for these reasons:  (1) there was no quorum because DSI's bylaws require a minimum of four directors; (2) Sol Riffel did not waive his right to formal notice and a meeting for the resolution; (3) DSI is operating in violation of

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 7

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

its bylaws; and (4) Holdner and Baum could not vote on the resolution because it is a conflict of interest transaction that serves solely to prevent their removal as directors by the Multnomah County Circuit Court.

    A.    There Was No Quorum for the Board Resolution Because DSI's Bylaws Require A Minimum of Four Directors.

DSI's bylaws state: "The number of the members of the Board of Directors shall be not less than four (4), nor more than eleven (11)." Kreitzberg July 9 Decl. ¶ 7, Ex. 2, ¶ 2.2. As part of the Corporate Breach and Removal Lawsuit, DSI produced board resolutions purporting to approve previous actions taken by DSI's board. One resolution stated that the board amended the bylaws to reduce the number of board members from four to three. Sol Riffel signed the resolution, although his son testified he has had nothing to do with DSI for over 20 years. DSI never produced amended bylaws. Gustitus Dec. 24 Decl. ¶ 11. Because the resolution purporting to retroactively amend the bylaws regarding the number of directors is invalid, DSI's bylaws still require four directors. DSI's bylaws also state that "a quorum of the Board of Directors consists of a majority of the number in office immediately before the meeting begins." Kreitzberg July 9 Decl. ¶ 7, Ex. 2, ¶ 2.8. Therefore, more than two directors are necessary to constitute a majority for board meetings. Because only two directors signed the resolution to file this bankruptcy petition, and the other director was listed as incapacitated, the resolution was not properly authorized because there was no quorum.

    B.    Sol Riffel Did Not Waive His Right to Notice of the Meeting.

DSI listed Sol Riffel on the board resolution to file this petition. Above his name, the word "incapacitated" is written. Gustitus Feb. 23 Decl. ¶ 14, Ex. L. DSI has not produced any documentation that Riffel has withdrawn from his position or that he has been removed. Gustitus Feb. 23 Decl. ¶ 17. Therefore, DSI appears to hold Riffel out as a director. As such, DSI was required to provide written notice to Riffel of the meeting to vote to file this bankruptcy petition. The bylaws require that special meetings of the board of directors be preceded by at least two days notice of the date, time, and place of the

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 8

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

meeting. Kreitzberg July 9 Decl. ¶ 7, Ex. 2, ¶ 2.6. DSI has not produced any documentation of notice provided to Sol Riffel of the special meeting. Gustitus Feb. 23 Decl. ¶ 17.

Although the resolution waives formal notice and meeting, that waiver is only valid for Holdner and Baum, who signed the resolution. Oregon law provides that a director may waive any notice required by the statue or bylaws. ORS 60.347. However, "the waiver must be in writing, must be signed by the director entitled to the notice, must specify the meeting for which notice is waived and must be filed with the minutes or corporate records." *Id.* Because Riffel did not sign the resolution, he has not properly waived notice, and the resolution is invalid. Therefore, Holdner lacked authority to file this bankruptcy petition, and it should be dismissed.

    C.    DSI Is Operating In Violation of its Bylaws.

Holdner and Baum operate DSI in violation of its bylaws and therefore do not have the authority to file for bankruptcy on behalf of DSI. DSI's bylaws require annual shareholder meetings at which the shareholders elect the board of directors. Kreitzberg July 9 Decl. ¶ 7, Ex. 2, ¶¶ 1.2., 2.3. DSI has not held a meeting in over 20 years. Holdner Dep. at 65:15–20. Because there has not been a shareholder meeting, DSI has also not had a board of directors election in over 20 years. The bylaws state "the directors shall be elected at the annual meeting of the shareholders. The terms of office of the directors shall begin immediately after the election and shall expire at the next annual shareholders' meeting following their election." Kreitzberg July 9 Decl. ¶ 7, Ex. 2, ¶ 2.3. Holdner and Baum's terms should have expired over 20 years ago if they operating DSI according to its bylaws.

As explained above, the bylaws also require a minimum of four directors, but as the resolution for this bankruptcy demonstrates, they are currently operating with two or three directors, depending on their interpretation of Sol Riffel's incapacity.

The bylaws also require an annual meeting of the board of directors. Kreitzberg July 9 Decl. ¶ 7, Ex. 2, ¶ 2.5.1. The meeting is supposed to take place immediately following the

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 9

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

annual shareholder meeting. *Id.* Baum testified that she has not met with Sol Riffel, the purported third director, for over 10 years in relation to DSI, prior to this litigation. Baum Dep. at 91:2–92:3. Sol Riffel's son also testified that his father was not involved with DSI for the last 20 to 30 years. Gustitus Feb. 23 Decl. ¶ 15, Ex. M at 10:8–19.

      D.      Holdner and Baum Could Not Vote on the Resolution to File Bankruptcy Because they Have a Conflict of Interest.

As explained above, Holdner and Baum were hours away from hearing a decision from Multnomah County Circuit Court as to whether they would be removed as directors of DSI under a preliminary injunction. Their tactic to wait until the last minute to determine whether the court would cancel the appearance and deny the preliminary injunction demonstrates the conflict of this filing, which was done for personal reasons to maintain their position of control over DSI. A director has a conflict of interest in "a transaction with the corporation in which a director of the corporation has a direct or indirect interest." ORS 60.361(1). Such transactions are voidable by DSI unless the material facts of the transaction were disclosed and approved by either a majority of the uninterested directors or a majority of the shareholders. *Id.* Sol Riffel, the only potentially uninterested director, was listed as incapacitated for the purposes of the resolution to file bankruptcy. Gustitus Feb. 23 Decl. ¶ 14, Ex. L. Holdner and Baum, by filing this bankruptcy, maintain control over DSI, for now, and prevent any possibility that the shareholders could have a neutral board to determine the best path for the company.

In addition, Holdner and Baum's counsel argued that they have "kept this company running for many, many years. They have kept it solvent. Its assets show it to be quite valuable." Feb. 5 Hearing Trans. at 132:7–10. DSI's property has a combined market value of $6,352,000, and liabilities of approximately $300,000. As Holdner and Baum's attorney states, DSI is solvent, with valuable assets, and this bankruptcy is not necessary. It was filed purely to prevent Holdner and Baum's removal and allow them to maintain control of DSI for as long as possible.

MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO APPOINT TRUSTEE

Page 10

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11   Doc 17   Filed 02/23/16

2. Motion to Dismiss for Lack of Good Faith and Improper Purpose.

The bankruptcy court may dismiss a Chapter 11 case "for cause"" pursuant to 11 U.S.C. Section 1112(b). Although Section 1112(b) does not explicitly require that cases be filed in "good faith," courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal. *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994). "The existence of good faith depends on an amalgam of factors and not upon a specific fact." *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis. *Id.*

The Debtor's subjective intent is not determinative. "Instead, the 'good faith' filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings." Marsch, 36 F.3d at 828. Courts have implied such limitations to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws. *See Furness v. Lilienfield*, 35 B.R. 1006, 1011 (D. Md. 1983); Lawrence Ponoroff & F. Stephen Knippenberg, *The Implied Good Faith Filing Requirement: Sentinel of an Evolving Bankruptcy Policy,* 85 Nw.U.L.Rev. 919, 946–47 (1991). "Pursuant to 11 U.S.C. § 1112(b), courts have dismissed cases filed for a variety of tactical reasons unrelated to reorganization. While the case law refers to these dismissals as dismissals for 'bad faith' filing, it is probably more accurate in light of the precise language of section 1112(b) to call them dismissals 'for cause.'" *Marsch*, 36 F.3d at 828.

"One limitation some courts have implied under section 1112(b) involves Chapter 11 cases filed to stay a state court judgment against the debtor pending appeal. In those cases, courts have expressed concern that the petition is merely a 'litigating tactic' designed to 'act as a substitute for a supersedeas bond' required under state law to stay the judgment." *Id.* at 828, citing *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984).

MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO APPOINT TRUSTEE
Page 11

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

Like the case in Marsch, this Debtor's Chapter 11 petition was filed solely as a "litigation tactic" to avoid compliance with the Circuit Court's order and the inevitable removal of Holdner and Baum from their positions of control. It was filed without a legitimate purpose; and, therefore, should be dismissed.

In *In re Silberkraus*, 253 B.R. 890, 902 (C.D. Cal. 2000) *sanctions aff'd* 336 F.3d 864 (9th Cir. 2003), the court was determining the good faith requirement of 11 U.S.C. Section 1129(a)(3). In that case the debtor was solvent, the petition had been filed two days prior to the trial date, and the debtor was forum shopping so as to have the bankruptcy court, rather than the state court, determine the validity and enforceability of certain contracts. *Id.* at 902–05. In this case, Debtor is solvent by as much as four to six million dollars, the petition was filed the same morning as, but just prior to, the Circuit Court's hearing to announce its ruling on the preliminary injunction that would remove Holdner and Baum, and Debtor is forum shopping for a court that will allow Debtor to sell all or at least the great majority of its assets.

The debtor in *Silberkraus* filed bankruptcy for the purpose of delaying and defeating the pending state court specific performance action and the court found that it was bad faith for the debtor to seek to use bankruptcy to alter whatever result would have been achieved by continuing to litigate the state court action. *Id.* at 905. "It constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in [a] nonbankruptcy forum — whether that nonbankruptcy forum is a state court or a federal district court." *Id.* The Silberkraus court found that the "overall teaching of this whole collection of cases is that two party disputes in state court (or federal district court) should be resolved through the normal litigation process in those forums." *Id.* at 906.

Here, an injunction was about to be issued in the Corporate Breach and Removal Lawsuit that would have removed Holdner and Baum from control of Debtor. The sale of the majority of Debtor's assets had already been subject to an injunction preventing Debtor

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 12

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

from selling any of Debtor's real property without first following its own bylaws and Oregon statutes to obtain the proper number of directors, resolving to approve a sale transaction, make complete disclosure to all shareholders, holding a shareholder vote, and obtaining a further court order confirming that Debtor had complied with such process prior to a sale being approved.  Gustitus Feb. 23 Decl. ¶ 7, Ex. E.  The filing of this case prevents the Circuit Court's rulings from having effect and allows Debtor to choose a forum Holdner and Baum believe is more likely to allow the sale of Debtor's assets.  Dismissing this case will allow the corporate governance issues and sale of Debtor's assets to be "resolved through the normal litigation process" of the Circuit Court.

       3.      <u>Motion to Dismiss for Gross Mismanagement.</u>

Where a court finds "gross mismanagement of the estate" by a debtor, that finding compels a conclusion that "cause" exists for dismissal or conversion of the chapter 11 case. 11 U.S.C. § 1112(b)(4)(B).  *In re Rent-Rite Super Kegs West, LTD*, 484 B.R. 799, 809 (Bankr. D. Co. 2012).  The Debtor's current management had no authority to file this case and has no legitimate authority from its shareholders or directors to continue in control as management.  Therefore, to allow the case to proceed under Holdner and Baum's control will allow Holdner and Baum to continue their pre-petition mismanagement and, at a minimum, to continue to manage Debtor without having proper authority.

Kreitzberg filed extensive pleadings and declarations in the Corporate Breach and Removal Lawsuit detailing the mismanagement of DSI by Holdner and Baum. The Multnomah County Circuit Court held two evidentiary hearings that lasted approximately five hours to hear evidence of Holdner and Baum's mismanagement, breaches of fiduciary duties, and self-dealing.  Filed herewith is the *Declaration of Sandra S. Gustitus* which includes pleadings filed in the Corporate Breach and Removal Lawsuit.  The Exhibits attached to the Declaration of Sandra S. Gustitus include *Plaintiffs' Ex Parte Motion for Order to Show Cause for Preliminary Injunction Not to Issue-Corrected* (Ex. H) and *Plaintiff's Hearing Memorandum* (Ex. I). The arguments made and evidence included in

MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO APPOINT TRUSTEE

Page 13

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

those pleadings and declarations are incorporated herein and are not repeated here for judicial economy, though Kreitzberg requests that this Court review those pleadings as if their argument and citations to facts were set forth herein.

In summary those pleadings include extensive evidence that Holdner and Baum:

- Fail to operate Debtor to maximize value and benefit to shareholders;
- Have approved loans and salary to Holdner despite Debtor's financial ability to cash flow those transactions;
- Use their positions with Debtor to engage in self dealing with HBB;
- Set HBB's rent below market value and have not increased HBB's rent since 1986;
- Overcharge Debtor for "professional services" performed by HBB by unilaterally determining the rate for such services;
- Illegally manage Debtor as unlicensed commercial brokers or managers; and
- Failed to operate Debtor according to its bylaws and observe basic corporate formalities for decades.

    4.    <u>Motion for Appointment of Trustee.</u>

In the alternative, and if the Court does not dismiss this case, then Kreitzberg requests the appointment of a trustee: 1) for cause, including dishonesty, incompetence, and/or gross mismanagement of the affairs of the Debtor by current management before the commencement of this case; and 2) since such appointment is in the interests of creditors, equity security holders, and other interests in this case. See *In re Corona Care Convalescent Corp.*, 527 B.R. 379, 383 (Bankr. C.D. Cal. 2015).

    A.    A Trustee Should Be Appointed For Cause.

Holder and Baum have grossly mismanaged Debtor's affairs, have been dishonest with shareholders through lack of disclosure to shareholders of Debtor, and have been incompetent in the management of Debtor. The evidence of that mismanagement, dishonesty, and incompetence has been extensively discussed above and in the pleadings attached to the Declaration of Sandra S. Gustitus filed herewith.

Exhibit 41 to the Declaration of Sandra S. Gustitus (December 24, 2015) is the letter opinion of the Honorable Katherine Tennyson of the Multnomah County Circuit

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 14

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477  FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16

Court in case numbers 0809-91482 and 0705-90804 detailing the extensive breach of fiduciary duties by Holdner and Baum as trustees, including their "utter lack of understanding by the Trustees [Holdner and Baum] of their duties and obligations" as fiduciaries. Gustitus Dec. 24 Decl. ¶ 6, Ex. 41, at 2. The trust case at litigation in Judge Tennyson's court did not involve DSI, but the extent of the breach of fiduciary duties by Holdner and Baum in those cases should lead this Court to prohibit Holdner and Baum from exercising similar disregard for the fiduciary duties of a debtor-in-possession.

  B. Appointment of a Trustee Is in the Interests of Creditors, Equity Holders, and the Estate.

The interests of creditors, equity holders, and the estate in this case would be best served by the appointment of a trustee, if the case is not dismissed and returned to Multnomah County Circuit Court. Holdner and Baum have proved that they cannot act as fiduciaries, they have continued self-dealing for approximately thirty years while managing Debtor, and they cannot be trusted to maximize the value for equity security holders. (Given the extensive amount of solvency of Debtor, it is certain that the limited creditors in this case will be paid 100%.)

Even Holdner and Baum's equity interest, if they are allowed to retain it, will be maximized by a trustee managing Debtor. Holdner and Baum attempted to accept a sale agreement for Debtor's office building for substantially less than its fair market value; they did not employ a real estate broker to market the office building prior to agreeing to a sale; they have allowed Debtor's office building to remain approximately 60% vacant for several years without employing a professional rental broker to lease the vacant space; they have allowed the main tenant of the office building, HBB, to lease space at a rental rate that is one-third of the market rate and which has not increased in 30 years; and they have allowed Debtor to pay above market rates for accounting and property management services. It is highly unlikely that a trustee would operate Debtor in a similar fashion and would, by merely employing basic fiduciary duties, increase the value of Debtor's equity. Such

MOTION TO DISMISS AND, IN THE ALTERNATIVE,
TO APPOINT TRUSTEE
Page 15

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11   Doc 17   Filed 02/23/16

increased equity would inure to Holdner and Baum, to the extent they retain any equity in Debtor.

CONCLUSION

This case should be dismissed for the reasons stated above and returned to the Multnomah County Circuit Court to finish the Corporate Breach and Removal Lawsuit. Such dismissal will avoid the use of this Court for improper litigation tactics and allow the Circuit Court to issue the ruling it was about to issue an hour or so after this case was filed. In the alternative, this Court should order the appointment of a trustee to manage Debtor because Holdner and Baum have repeatedly proved their inability to follow basic fiduciary duties and have mismanaged Debtor for decades.

Respectfully Submitted,

Law Office of Shawn P. Ryan

/s/ Shawn P. Ryan
Shawn P. Ryan, OSB #901137
Attorney for Richard A. Kreitzberg

Chenoweth Law Group, P.C.

/s/ Sandra S. Gustitus
Brian D. Chenoweth, OSB #944991
Sandra S. Gustitus, OSB #143298
Attorneys for Richard A. Kreitzberg

MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO APPOINT TRUSTEE
Page 16

LAW OFFICE OF SHAWN P. RYAN
GUS SOLOMON COURTHOUSE
620 SW MAIN STREET, SUITE 612
PORTLAND, OR 97205
(503) 417-0477 FAX (503) 417-0475

Case 16-30477-rld11    Doc 17    Filed 02/23/16