Below is an Opinion of the Court.

RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In Re: | ) | Bankruptcy Case |
|---|---|---|
| | ) | No. 16-30477-rld11 |
| Data Systems, Inc. | ) | |
| | ) | **AMENDED** |
| Debtor. | ) | MEMORANDUM OPINION |

On November 22, 2016, I held the confirmation hearing ("Confirmation Hearing") with respect to the First Amended Plan of Reorganization (Docket No. 155) ("Plan") proposed by the duly appointed chapter 11[1] trustee Amy Mitchell ("Trustee") for the debtor-in-possession Data Systems, Inc. ("DSI"). At the Hearing, I heard the testimony of Richard Kreitzberg ("Mr. Kreitzberg"), the Trustee, and special counsel Robert J. McGaughey ("Special Counsel") in support of confirmation of the Plan and the testimony of William F. Holdner ("Mr. Holdner") in opposition to confirmation. In addition, I heard argument from the

---

[1] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 1 - AMENDED MEMORANDUM OPINION

Trustee's counsel, counsel for the United States Trustee, and Mr. Holdner.

In deciding the confirmation issues raised in this case, I have considered carefully the testimony presented at the Confirmation Hearing, the admitted exhibits (Trustee's Exhibit 1 with Exhibits A through E attached; and Mr. Holdner's Exhibits A and B), and the arguments presented at the Hearing. I also have taken judicial notice of the docket and documents filed in DSI's main chapter 11 case, Case No. 16-30477-rld11, for the purpose of confirming and ascertaining facts not reasonably in dispute. Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006). In addition, I have reviewed relevant legal authorities, both as cited to me by the parties and discovered through my own research.

In light of that consideration and review, this Memorandum Opinion sets forth the court's findings of fact and conclusions of law under Civil Rule 52(a), applicable in this contested matter under Rules 7052 and 9014. I will enter an order confirming the Plan for the following reasons.

## I. FACTUAL BACKGROUND[2]

1) DSI early history, operations and assets

DSI was formed as an Oregon corporation, and for a number of years, it operated to provide computer and related services to businesses. DSI stock previously was publicly traded on the NASDAQ, and

---

[2] The background information set forth herein comes primarily from the Trustee's Second Amended Disclosure Statement (Docket No. 161) ("Disclosure Statement"), approved by order (Docket No. 164) entered on October 6, 2016.

Page 2 – AMENDED MEMORANDUM OPINION

it has approximately 300 shareholders.  However, it ultimately was delisted, and the company went private.  Mr. Holdner and Jane Baum ("Ms. Baum") served as DSI's directors and as its president and secretary, respectively.  Mr. Holdner has held these positions for over 50 years, and Ms. Baum, for over 20 years.  DSI has operated since 1993 with less than the minimum four directors required by its by-laws, and, for many years, no shareholders meetings were noticed or held.  Of the approximately 599,900 outstanding shares of DSI common stock, Ms. Baum holds 149,362 shares (approximately 24%); Mr. Holdner holds 135,100 shares (approximately 22%); and Mr. Kreitzberg holds 238,555 shares (approximately 39%).  The balance of approximately 15% of DSI's outstanding stock is held in small lots by the remaining several hundred shareholders.  There is no public market for DSI common stock.

In 1973, DSI built a two-story office complex on Sandy Boulevard in Portland ("Main Office").  DSI used the Main Office to store, manage and operate very large mainframe computers and maintained additional space for expansion.  However, in 1993, IBM stopped supporting and servicing mainframe computers like the ones owned and operated by DSI.  Consequently, according to Mr. Holdner, he and DSI recognized that DSI would need to change its focus in order to survive.  Under the direction of Mr. Holdner and Ms. Baum, DSI was repurposed to become a property management company, relying on increasing value of its real estate and its potential for regular income through commercial leasing.

DSI's commercial tenants include Mr. Holdner and Ms. Baum's accounting firm ("Accounting Firm"), which occupies 2,400 square feet in the Main Office, half of which is devoted to storage for DSI rent-free,

Page 3 - AMENDED MEMORANDUM OPINION

with the other half rented to the Accounting Firm at the same rent charged since 1986. DSI collects some rents from other month-to-month tenants, but much of the Main Office is unoccupied. Based on her business judgment in light of the potential costs and disputes involved, the Trustee has not increased the Accounting Firm's rent to reflect a market rate or taken other steps to address the Accounting Firm's lease pending this court's consideration of confirmation of the Plan.

DSI's value is in its real estate holdings, including the Main Office and five smaller properties, which all are located within two blocks of the Main Office property. In its schedules, DSI valued all of its real estate holdings at a total of $7,500,000, with $5,000,000 value allocated to the Main Office. See Docket No. 59. Liens totaling only approximately $270,000 encumber DSI's real property assets. See id.

2) Prepetition litigation

In March 2015, after learning that Mr. Holdner had signed a purchase and sale agreement for the Main Office property, the proceeds of whcih Mr. Holdner intended to distribute as dividends, Mr. Kreitzberg filed a derivative lawsuit on behalf of DSI in Multnomah County Circuit Court, case no. 15CV07240 ("State Court Litigation"). In the State Court Litigation, Mr. Kreitzberg alleged that Mr. Holdner did not have shareholder authorization to sell substantially all of DSI's assets or to liquidate DSI. He also alleged that Mr. Holdner and Ms. Baum had breached their fiduciary duties to DSI, had engaged in self-dealing, and had mismanaged DSI through conflict of interest transactions. Through the State Court Litigation, Mr. Kreitzberg sought to remove Mr. Holdner and Ms. Baum as DSI directors and requested damages. The court in the

Page 4 - AMENDED MEMORANDUM OPINION

State Court Litigation entered a preliminary injunction preventing Mr. Holdner and Ms. Baum from selling any property of DSI without first taking certain required actions. On the eve of a hearing before the state court to deliver its decision on Mr. Kreitzberg's request for further injunctive relief, DSI filed its chapter 11 petition, effectively staying the State Court Litigation. The stay of § 362(a) remains in place as to the State Court Litigation.

Meanwhile, in January 2016, DSI, at the direction of Mr. Holdner, filed a lawsuit against Mr. Kreitzberg and his affiliate, RAK Investments, LLC, in the United States District Court for the District of Oregon, case no. 16-cv-00110-SI ("District Court Litigation"). In the District Court Litigation, DSI, through Mr. Holdner, alleged that Mr. Kreitzberg wrongfully and fraudulently attempted to gain control over DSI by making a tender offer to purchase shares of DSI's common stock for $7.00 per share. DSI's prayer for relief in the District Court Litigation does not include a claim for damages. See Exhibit 1, Exhibit C attached. I denied without prejudice Mr. Kreitzberg's motion for relief from stay to allow the District Court Litigation to proceed by order entered on April 25, 2016 (Docket No. 76), and no subsequent order has been entered to allow the District Court Litigation to move forward.

At the time of DSI's bankruptcy filing, it had cash and deposits totaling $4,043.32, an amount clearly inadequate to fund defense of the State Court Litigation or prosecution of the District Court Litigation.

3) <u>DSI's bankruptcy filing and relevant postpetition events</u>

DSI filed its petition for protection under chapter 11 on

Page 5 - AMENDED MEMORANDUM OPINION

February 11, 2016. See Docket No. 1. Shortly thereafter, Mr. Kreitzberg filed a motion to dismiss ("Motion to Dismiss") DSI's chapter 11 case or, in the alternative, to appoint a chapter 11 trustee to manage DSI in chapter 11 on the grounds that 1) DSI's chapter 11 case was filed without proper authorization; 2) the case was filed for an improper purpose; and 3) DSI was being "grossly mismanaged." See Docket No. 17. DSI opposed the Motion to Dismiss. See Docket No. 30. Following an evidentiary hearing on April 25, 2016, the court denied the Motion to Dismiss but ordered the United States Trustee to appoint a chapter 11 trustee for reasons stated orally on the record. See Docket Nos. 75, 76 and 78. Ms. Mitchell was appointed as the Trustee effective May 4, 2016. See Docket Nos. 79 and 80.

In the meantime, DSI had filed a motion to approve a sale of the Main Office property ("Sale Motion") for $5,000,000, net of broker's commission, free and clear of liens. See Docket No. 64. The terms of sale included a downpayment of $1,000,000, interest at 5%, and a balloon payment at the end of five years of approximately $4,000,000. See id. at 3. Following her appointment, the Trustee withdrew the Sale Motion. See Docket No. 88. Mr. Holdner subsequently filed a motion ("Holdner Sale Motion") seeking approval of a sale of the Main Office property on essentially the same terms as the Sale Motion. See Docket No. 95. The Trustee and Mr. Kreitzberg objected to the Holdner Sale Motion. See Docket Nos. 106 and 107. In her objection, the Trustee advised that in her business judgment, the proposed sale of the Main Office property would not be in the best interests of DSI's estate. Following a hearing, the court denied the Holdner Sale Motion by order entered on June 21,

2016.  <u>See</u> Docket Nos. 117 and 119.  That order was not appealed.

Following a period where the Trustee explored options for settling the disputes among the feuding DSI shareholders, the Trustee concluded that she needed to proceed to propose a reorganization plan for DSI.  Accordingly, the Trustee filed a proposed disclosure statement and a proposed plan of reorganization on August 5 and 8, 2016, respectively. <u>See</u> Docket Nos. 132 and 133.  On August 9, 2016, the Trustee filed objections to the claims filed by Mr. Holdner and Mr. Kreitzberg.  <u>See</u> Docket Nos. 134 and 135.  Mr. Holdner objected to the Trustee's proposed disclosure statement, and shareholder Gary Maffei joined in Mr. Holdner's objections. <u>See</u> Docket Nos. 143 and 151.  The Trustee filed the Plan and a First Amended Disclosure Statement on September 30, 2016.  <u>See</u> Docket Nos. 155 and 156.  The Trustee further filed a response to the objections to the proposed disclosure statement filed by Mr. Holdner and Mr. Maffei ("Trustee Disclosure Statement Response"). <u>See</u> Docket No. 159. Following the duly noticed disclosure statement hearing, the court approved the Disclosure Statement, modified as discussed at the hearing, and the Confirmation Hearing was scheduled. <u>See</u> Docket Nos. 160 and 164.

The Plan upon which DSI creditors and shareholders voted, includes the following main provisions: 1) The allowed claims of general unsecured creditors (Class 1) will be paid in full, without interest, no later than 60 days after the effective date of the Plan.  Because the general unsecured creditors receive no interest on their allowed claims under the Plan, their claims are treated as impaired for voting purposes. 2) The claims of DSI insiders, Mr. Holdner and Mr. Kreitzberg (Class 2), will be paid in full plus interest in their allowed amounts as soon as

reasonably practicable after the effective date of the Plan, and the allowed amounts of their claims are determined. The insider Class 2 claims are not treated as impaired under the Plan. 3) Administrative expenses, secured property tax claims (Class 3) and the secured claim of Bank of the West (Class 4) will be paid in full in their allowed amounts, plus allowed interest, as soon as reasonably practicable after the effective date of the Plan, and the allowed amounts are determined. All are unimpaired under the Plan. 4) Shareholders (Class 5) are given a choice under the Plan: They can retain their equity interests in the reorganized DSI, or they can sell their shares for $7.00 per share. The Plan will be funded by a sale of approximately 160,000-170,000 shares of DSI treasury stock to Mr. Kreitzberg at $7.00 per share to allow for payment of Plan obligations and to recapitalize DSI. However, the Plan provides a mechanism whereby interested parties, including Mr. Holdner and Ms. Baum and any other DSI shareholder, can overbid Mr. Kreitzberg and substitute for him to fund the Plan. In the event of a successful overbid, the purchase price to be received by selling DSI shareholders would be increased accordingly.

In Plan balloting, all voting members of Class 1 voted in favor or the Plan. In Class 5, 92% of voting class members (23 of 25) voted in favor of the Plan, but the Plan was not accepted by the class because less than two-thirds of the voting shares (62%) voted in favor of the Plan. See Docket No. 191 and § 1126(d).

Mr. Holdner filed an Objection to Any Proposed Cramdown in an Amended Plan of Reorganization ("Objection") (Docket No. 183), making a number of assertions but arguing primarily that the Plan could not be

Page 8 - AMENDED MEMORANDUM OPINION

confirmed because 1) it discriminates among DSI shareholders by diluting their equity interests in favor of Mr. Kreitzberg; 2) the Plan is too speculative and is not feasible; 3) the Plan is not proposed in good faith; and 4) the Plan cannot be confirmed because it is a "tax avoidance scheme," unlawful "under Chapter 5 of SECURITIES EXCHANGE ACT OF 1933." The Trustee responded to the Objection in her Memorandum in Support of Confirmation ("Confirmation Memorandum") (Docket No. 196).

Mr. Holdner further filed a renewal of his objections to the Disclosure Statement ("Renewal") (Docket No. 181). The Trustee responded to the Renewal in the Confirmation Memorandum and in a separate response ("Response") (Docket No. 193), relying in part on the previously filed Trustee Disclosure Statement Response but further arguing that since the court had approved the Disclosure Statement in a final order that was not appealed, the arguments raised in the Renewal were moot.

## II.  JURISDICTION

This court has jurisdiction over the matters to be decided at the Confirmation Hearing under 28 U.S.C. §§ 1334 and 157(b)(2)(L). Confirmation of a plan in chapter 11 specifically is within the core jurisdiction of bankruptcy courts.

## III.  CONFIRMATION STANDARDS

The requirements for confirmation of a reorganization plan in chapter 11 are set forth in § 1129 of the Bankruptcy Code. The court has an affirmative duty to make sure that all requirements for confirmation under § 1129 have been met. <u>Liberty Nat'l Enterprises v. Ambanc La Mesa</u>

Page 9 – AMENDED MEMORANDUM OPINION

Ltd. Partnership (In re Ambanc La Mesa Ltd. Partnership), 115 F.3d 650, 653 (9th Cir. 1997). The court must confirm a plan if the plan proponent proves by a preponderance of the evidence that all applicable requirements of § 1129(a) have been met. Id. However, if the only confirmation standard that has not been met is the § 1129(a)(8) requirement that, with respect to each class of claims or equity interests, "(A) such class has accepted the plan; or (B) such class is not impaired under the plan," the court further must determine that the plan satisfies the standards for "cramdown" under § 1129(b), i.e., the plan "does not discriminate unfairly" against and is "fair and equitable" with respect to each impaired class that has not accepted the plan.

### IV.   THE EVIDENCE PRESENTED

In advance of the Confirmation Hearing, counsel for the Trustee submitted the Confirmation Memorandum, supported by the declaration of the Trustee. See Docket No. 196 and Exhibit 1 with attached Exhibits A through E. In addition, the Trustee testified at the Confirmation Hearing to address each of the applicable confirmation requirements under § 1129 as follows:

She testified that the Plan, including its provisions for classification of creditor claims and shareholder equity interests, and she, as Plan proponent, complied with all applicable provisions of the Bankruptcy Code. §§ 1129(a)(1) and (2).

She testified that the Plan was proposed in good faith and not by any means proscribed by law. § 1129(a)(3).

She testified that any payments to be made under the Plan for

Page 10 - AMENDED MEMORANDUM OPINION

administrative expenses in connection with the case would be subject to court review for reasonableness. § 1129(a)(4).

She testified that she would serve as plan agent for DSI postconfirmation and would notice a shareholders meeting for election of a new Board of Directors, consistent with the requirements of DSI's by-laws. § 1129(a)(5).

She testified that the sole impaired class of creditors under the Plan (general unsecured creditor Class 1) had voted to accept the Plan, and the shareholder class (Class 5) that had not voted to accept the Plan by the requisite amount would receive more under the Plan ($7.00 per share to selling shareholders) than in a chapter 7 liquidation based on her analysis, as set forth in Exhibit A to the Disclosure Statement. See Exhibit 1, at 2. § 1129(a)(7).

She testified that all classes of creditors either were unimpaired or had voted to accept the Plan. The single shareholder class, Class 5, did not vote to accept the Plan. §§ 1126(d) and 1129(a)(1)(8). Accordingly, to confirm the Plan would require the Trustee to satisfy the requirements for "cramdown" under § 1129(b).

She testified that all administrative claims would be paid in full as soon as reasonably possible after the effective date of the Plan and any necessary court approvals. § 1129(a)(9).

She testified that the noninsider class of general unsecured claims (Class 1) had accepted that Plan. § 1129(a)(10).

She testified that she was satisfied that the Plan is feasible. In particular, she testified that she had reviewed Mr. Kreitzberg's recent Charles Schwab investment account statements and was comfortable

Page 11 - AMENDED MEMORANDUM OPINION

that he had readily available assets to fund implementation of the Plan. In his testimony, Mr. Kreitzberg likewise testified that he had assets available to fund the Plan obligations. § 1129(a)(11).

She testified that all United States Trustee fees had been paid to date and would continue to be paid through the effective date. § 1129(a)(12).

§§ 1129(a)(6), (13), (14), (15) and (16) do not apply.

In her declaration in support of confirmation, the Trustee declared that based on her own investigation, corroborated by advice of counsel, the Plan did not present any securities law problems. <u>See</u> Exhibit 1, at 2.

As to the requirements for "cramdown," she testified that all creditors would be paid in full under the Plan, and shareholders would have the option of selling their shares of DSI common stock for an above-market price or retain their DSI shares. § 1129(b).

Since DSI went private and was delisted from the NASDAQ, there is no recognized "market" for DSI common stock. In such circumstances, outside of the Plan, such stock might be sold in private placement transactions, but determining the price could be problematic. Section 1145 of the Bankruptcy Code provides an exemption from the registration requirements of the Securities Act of 1933 ("Securities Act") and state securities law for "certain securities issued, distributed and sold during chapter 11 cases or under plans of reorganization." <u>See</u> § 1145 and 8 <u>Collier on Bankruptcy</u> ¶ 1145.01[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Under § 1129(d), the Securities and Exchange Commission ("SEC") has standing to object to confirmation of a chapter 11

plan "if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 [registration requirements] of the Securities Act . . . ." Counsel for the Trustee advised at the outset of the Confirmation Hearing that the SEC was provided with copies of the Plan and Disclosure Statement and notified of the date of the Confirmation Hearing as part of the general notice process for the Confirmation Hearing. I note that the SEC has not appeared in this case, did not file an objection to confirmation of the Plan and did not appear at the Confirmation Hearing. Special Counsel testified that he had reviewed the Plan and Disclosure Statement and the notices with respect to the Plan and Confirmation Hearing, and he did not perceive any securities law problems. Specifically, he did not perceive the Plan as presenting any problems with respect to securities law registration requirements.

Mr. Holdner testified in opposition to confirmation, reiterating a number of claims he has asserted consistently in this case: First, he argued from his demonstrative Exhibit B that the $7.00 offering price per share of DSI common stock included in the Plan is too low, as by closing a sale of the Main Office property now for $5,000,000, payable $1,000,000 down, with 5% interest on the deferred balance of $4,000,000, and a balloon payment at the end of 5 years, the "projected value per share" would be $9.55. In light of Mr. Holdner's professional experience as a CPA since 1968, I find it both surprising and disingenuous that in his calculations to arrive at his $9.55 per share value, he deducts nothing for payment of DSI's liabilities, including his personal claim for $1,518,262.81 (Claim No. 10 on the claims register); he does not

discount to present value the $4,000,000 deferred portion of the proceeds from his projected $5,000,000 sale of the Main Office property; and he does not discount for the risk of nonpayment of the deferred balance of the Main Office sale proceeds. The Trustee testified that she rejected Mr. Holdner's $9.55 per share valuation as not realistic because it did not incorporate a deduction for any of DSI's liabilities. I ultimately conclude that Mr. Holdner's $9.55 per share projected valuation for the DSI common stock is not credible, particularly considering its failure to incorporate any deduction for DSI liabilities, either existing or on-going.

Mr. Holdner further testified that he did not consider the Plan fair to shareholders in that it only offered them $7.00 per share, consistent with a tender offer Mr. Kreitzberg made earlier to the shareholders that Mr. Holdner views as fraudulent. See Exhibit A. Mr. Holdner asserts that the Plan is the embodiment of a scheme to allow Mr. Kreitzberg to avoid paying taxes on dividends that otherwise would be distributed from Main Office property sale proceeds. The Plan would allow Mr. Kreitzberg to obtain control of DSI and dilute the ownership interests of shareholders who elect to retain their shares.

In addition, Mr. Holdner asserted that the Trustee had done an inadequate job of investigating Mr. Kreitzberg's ability to fund the recapitalization of DSI mandated by the Plan and had not provided adequate evidence that the Plan was feasible.

Following the testimony of witnesses and confirmation from Trustee's counsel and Mr. Holdner that they had no additional witnesses to call, I closed the record.

Page 14 - AMENDED MEMORANDUM OPINION

1    During oral argument, Trustee's counsel argued that the Trustee
2  had met her burden of proof to establish all of the confirmation
3  requirements under § 1129, and the Plan should be confirmed, relying on
4  the Confirmation Memorandum; Exhibit 1 and the attached Exhibits A
5  through E; and the testimony of the Trustee and Mr. Kreitzberg.  Counsel
6  for the UST advised that she was appearing to confirm that amendments to
7  the Plan being proposed by the Trustee to allay the UST's concerns about
8  the treatment of potential claims against the Trustee and her
9  professionals were satisfactory to the UST and appeared consistent with
10 Bankruptcy Code requirements.

11    I asked Mr. Holdner during his argument to identify the
12 particular provisions of § 1129 that he felt the Trustee did not meet her
13 burden of proof to satisfy.  In response, Mr. Holdner deflected the
14 question and returned to his arguments that the Plan was speculative and
15 not feasible; that the Plan violated tax law because its principal
16 purpose was tax avoidance, and the Plan violated federal securities laws;
17 the Plan was not fair to DSI shareholders; and the value that
18 shareholders would receive under the Plan was too low.  He further
19 asserted that a main basis for his opposition to confirmation was the
20 inadequacies of the Disclosure Statement.  Following argument, I took the
21 matter under advisement.

22

23                          **V.   DISCUSSION**
24 1) Compliance with law and good faith

25    The Trustee testified, without objection, that the Plan and
26 she, as the Plan proponent, complied with all applicable provisions of

Page 15 - AMENDED MEMORANDUM OPINION

the Bankruptcy Code.  Mr. Holdner objects, alleging violations of securities and tax laws.  In her Declaration in support of confirmation, the Trustee declared that based on her own investigation and advice of Special Counsel, she was "not aware of any securities-related issues with the Plan."  Exhibit 1, at 2.  Special Counsel likewise testified that he did not perceive any securities law problems.  In light of that evidence and the exemption from registration provided for in § 1145, I am unpersuaded by Mr. Holdner's lay opinions that the Plan violates the registration provisions of the Securities Act and the securities fraud provisions of SEC Rule 10b-5.

I understand Mr. Holdner's argument that confirmation of the Plan may further the purpose of Mr. Kreitzberg to avoid paying taxes on DSI dividends at ordinary income tax rates, but I do not agree that avoidance of taxes is the Plan's primary purpose.  The Trustee proposed a plan that will pay all creditor claims in full in the short term and will provide a market for sale of the DSI share holdings of minority shareholders, a market that does not exist currently.  The Trustee presented evidence that the $7.00 per share offering price for DSI stock under the Plan provides a premium over what shareholders could expect to receive in a liquidation – possibly a substantial premium.  The evidence submitted through Mr. Holdner's Exhibit B does not present a credible alternative.  The Plan provides means to recapitalize DSI with working capital in addition to amounts required to fund the payments of creditor claims and stock buyouts.  It further provides a mechanism for resolving the contentious corporate governance issues that have plagued DSI in recent times.  Accordingly, I conclude that the Trustee has met her

burden of proof to establish that the Plan and the Trustee, as Plan proponent, have complied with applicable law.

"[F]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir. 1984). I find that the Plan will achieve such results, and I conclude in the totality of the circumstances that the Plan was proposed in good faith.

2) Feasibility

The Trustee testified that she had examined Mr. Kreitzberg's recent Charles Schwab investment account statements and was comfortable that he could fund the capital investments required by the Plan. Mr. Kreitzberg corroborated her assessment in his testimony. Mr. Holdner argued that the Trustee's investigation of Mr. Kreitzberg's finances was inadequate, making the Plan too speculative to be confirmed. However, Mr. Holdner provided no evidence to support his assertions.

Under Ninth Circuit law, the "feasibility" standard in § 1129(a)(11) is very forgiving. "In this circuit, all a debtor need demonstrate is that the plan 'has a reasonable probability of success.'" Wells Fargo Bank, N.A. v. Loop 76, LLC et al. (In re Loop 76, LLC), 465 B.R. 525, 544 (9th Cir. BAP 2012), quoting Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352, 1364 (9th Cir. 1986). "[A] relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility." In re Loop 76, LLC, 465 B.R. at 544, citing Computer Task Group, Inc. v. Brotby (In re Brotby),

303 B.R. 177, 191 (9th Cir. BAP 2003). I find that the Trustee submitted adequate evidence to support Plan feasibility, and I conclude that the feasibility confirmation requirement in § 1129(a)(11) is satisfied.

3) Cramdown

As noted above, the Plan provides current DSI shareholders with two options: They can retain their shares of common stock in the reorganized DSI or they can sell their DSI stock for a purchase price not less than $7.00 per share. Although the Plan specifically provides for an overbid option for any interested parties, including Mr. Holdner and Ms. Baum (see particularly § 7.2 of the Plan), the Plan at the outset relies on Mr. Kreitzberg to fund Plan obligations, including shareholder buyouts, through purchasing 160,000-170,000 shares of DSI treasury stock for $7.00 per share. Mr. Holdner objects that the Plan is unfair to shareholders because it will allow Mr. Kreitzberg to obtain control of DSI and dilute the share ownership interests of shareholders who elect to retain their stock in DSI.

I find that the Plan does not discriminate unfairly among the DSI shareholders: They have the option to retain their shares or sell them for $7.00 a share, giving them a market for their shares at a premium over liquidation value. Those shareholders who retain their DSI shares will have their ownership interests diluted through the recapitalization of the company, and I find nothing inequitable about that: the injection of funds through implementation of the Plan will allow DSI to pay its creditors and administrative expense claimants, to pay selling shareholders for their shares, and to retain working capital to fund operations going forward. In these circumstances, I conclude

Page 18 - AMENDED MEMORANDUM OPINION

that the Trustee has met her burden of proof to establish that the Plan is fair and equitable and, again, is not unfairly discriminatory in its treatment of the DSI shareholders. The requirements for cramdown have been met.

4) Other § 1129 requirements

The Trustee submitted evidence that the requirements of §§ 1129(a)(4), (5), (7), (9), (10) and (12) are satisfied, and Mr. Holdner has raised no discernible or effective arguments to the contrary. As noted above, the requirements of §§ 1129(a)(6), (13), (14), (15) and (16) do not apply. Accordingly, I conclude that the confirmation requirements of § 1129 have been satisfied.

5) Renewal of objections to the Disclosure Statement

Mr. Holdner filed the Renewal of his objections as to the adequacy of the Disclosure Statement in advance of the Confirmation Hearing, and in his argument at the Confirmation Hearing, he referenced the objections stated in the Renewal as a principal basis for denying confirmation of the Plan. As previously noted, in her Response to the Renewal, the Trustee argued that since my order approving the Disclosure Statement was not appealed, the objections stated in the Renewal were moot.

Under the Federal Rules of Bankruptcy Procedure, an order approving a disclosure statement is recognized as an immediately appealable final order. See, e.g., Rule 8002(d)(2)(E) and the Advisory Committee notes to Rule 8002. However, the Ninth Circuit, relying on Fifth Circuit authority, Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1154-56 (5th Cir. 1988), has held

that alleged inadequacies in a disclosure statement can be raised at confirmation because "the inadequacy of disclosure can only injure a [party in interest] if the plan is eventually confirmed." Everett v. Perez (In re Perez), 30 F.3d 1209, 1216-17 (9th Cir. 1994). Accordingly, I have considered Mr. Holdner's objections to the Disclosure Statement stated in the Renewal but not previously addressed in this Memorandum Opinion, including the following:

a) "[T]he Trustee fails to disclose the immediate pending sale of [the Main Office property] to Portland Fashion Institute, LLC and immediate availability of funds." Although Mr. Holdner clearly wishes it were otherwise, as stated in the Trustee Disclosure Statement Response, there is no pending sale of the Main Office property. I denied the Holdner Sale Motion by order entered on June 21, 2016. That order was not appealed, and no further motion to approve a sale of the Main Office property has been filed. In any event, as noted by the Trustee, the proposed sale of the Main Office property was described in Section III.C. of the Disclosure Statement.

b) "[T]he Trustee fails to disclose the potential claim for damages against [Mr.] Kreitzberg in the federal lawsuit that would benefit the [DSI] estate." DSI's prayer for relief in the Complaint in the District Court Litigation does not assert a claim for damages. See Exhibit 1, Exhibit C attached. I perceive no error in the failure of the Disclosure Statement to include a description of Mr. Holdner's unsupported contentions that damages might be asserted (let alone collected) in claims to be added in the District Court Litigation beyond what already is included in Section II.B. of the Disclosure Statement.

c) "[T]he Trustee fails to disclose a filing of a lis pendens by [Mr. Kreitzberg] that was later determined to be invalid." Mr. Holdner fails to explain what relevance such disclosure would have to consideration of the Plan by interested parties, and I do not perceive any relevance.

d) "The Trustee has stated in the draft plan of reorganization that if [Mr.] Holdner and [Ms.] Baum refuse to sell their shares they will be sued, an act of extortion." The Plan says no such thing.

The Renewal goes on at length to state a further litany of allegations as to defects in the Disclosure Statement and Plan that are similarly materially inaccurate, irrelevant or both. Ultimately, I conclude that I did not err in approving the Disclosure Statement as containing adequate information to allow interested parties to make an informed decision on acceptance or rejection of the Plan, and I will overrule Mr. Holdner's confirmation objections based on alleged inadequate information in the Disclosure Statement.

## VI. CONCLUSION

For the foregoing reasons, I conclude that the Trustee has met her burden of proof with respect to all applicable standards for confirmation of the Plan, and I will enter an order confirming the Plan. Counsel for the Trustee should submit for signature an order confirming the Plan, completed and substantially in the form attached to the Confirmation Memorandum, with attached appendices, within the next week.

Case 16-30477-tmb11    Doc 210    Filed 12/06/16